**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COLLETTE STAMPS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ARTURO HERNANDEZ, *et al.*, <br><br> Defendants. | Case No 08 C 2196 <br><br> Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are Cross-Motions for Partial Summary Judgment on Count 1 of the Complaint. For the reasons stated herein, Plaintiffs' Motion is granted in part and denied in part. Defendants' Motion is denied.

### I. BACKGROUND

Collette Stamps and Walter Hopkins, along with Stamps' three minor children (hereinafter, the "Plaintiffs"), are suing the City of Chicago and eight of its police officers under 42 U.S.C. § 1983 after police broke down their apartment door and forcibly entered in what was admittedly a drug raid on the wrong apartment.

On November 24, 2007, Chicago police officer Daniel Honda ("Officer Honda"), learned from an informant (hereinafter, "John Doe") that a suspect was dealing drugs out of the third floor

apartment of 1404 South Homan Avenue in Chicago, a Chicago Housing Authority ("CHA") building.  Officer Honda had never relied on John Doe before and was unaware of any other Chicago police officer having done so.  Officer Honda had arrested John Doe one or two days before for selling cannabis.  John Doe led Officer Honda to the third floor of the building.  At the top of the stairs were two doors.  Officer Honda testified that there were no numbers on the doors.  John Doe indicated that the door on the left, directly next to the stairwell, was the door to the apartment from which drugs were being sold.  Officer Honda asked about the door on the right.  John Doe told him that no one lived there and he didn't have to worry about it.

Officer Honda then prepared a complaint for a search warrant, in which he described the premises to be searched as, "The 3rd floor apartment of a three-story CHA building located at 1404 S. Homan Ave., Chicago, Cook County, Illinois." Sergeant Phillip Leibas ("Sergeant Leibas") reviewed the complaint and did not note any deficiencies.  Sergeant Leibas advised Officer Honda to make sure he got the right apartment.  Sergeant Leibas testified that he believed the warrant was for Apartment 303 (the apartment on the left) and that the number was on the door. Based on the complaint, the affidavit of Officer Honda, and the testimony of John Doe, a judge signed a warrant to search the "3rd floor apartment" of the building.

On November 25, 2007, immediately before execution of the warrant, the police team that was going to execute the warrant held a meeting. The police team consisted of at least 11 officers. Officer Honda, who had visited the building many times in his police work, drew a diagram of the building and explained to the other officers that the targeted apartment was the first door on the left on the third floor. He explained that there was a second door, but that it was not the targeted door.

The officers executed the search warrant on the evening of November 25, 2007. Officers Acevedo and Alaniz were the "breach" officers, meaning that their duty was to break down the door with a 50-pound metal cylinder. When they reached the top of the stairs, the breach officers went past the first apartment, on the left, to the second one, on the right. One of them commented that there were no numbers on the doors. The breach officers state that Officer Alaniz knocked on the door of the apartment on the right, announced his office, and said he had a search warrant. The residents of the apartment testified that they did not hear the knocking or announcements. Officers Acevedo and Alaniz then battered the door with the metal cylinder until it gave way.

Several police officers (it is disputed exactly how many) entered Plaintiffs' apartment to encounter Plaintiffs Collette Stamps, her boyfriend Walter Hopkins, and Ms. Stamps' three minor

children having dinner.  Officer Honda, who entered the apartment shortly after the breach, said that the majority of officers who were in the apartment at that time had their guns drawn and were pointing them at the occupants.

Police soon realized they were in the wrong apartment, apologized, and went over to the apartment on the left to execute the search warrant.  They later came back to replace the door, although Plaintiffs stated that the replacement door did not lock properly.  Plaintiffs claim that they have all suffered emotional distress since the incident and that the children have needed treatment by a psychologist.

Plaintiffs' Complaint brings claims against the officers under 42 U.S.C. § 1983 and the Fourth Amendment for unreasonable search and seizure (Count 1) and excessive force (Count 2). Count 3 is a claim against the City of Chicago under 745 Ill. Comp. Stat. 10/9-102.  Only Count 1 is at issue in the Cross-Motions for Summary Judgment.  Plaintiffs move for summary judgment against Defendants Honda, Acevedo, and Leibas for procuring an insufficiently particularized warrant and for unreasonably executing the warrant. Plaintiffs additionally move for summary judgment against Defendants Hernandez, Alaniz, and Calvillo for unreasonable execution of the warrant.

## II. **LEGAL STANDARDS**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role, when ruling on a motion for summary judgment, is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue of material fact that warrants trial. *Id.* at 249. In making this determination, the court must view all the evidence and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

When ruling on cross-motions for summary judgment, the court evaluates each party's motion separately and on its own merits, resolving factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. *Patrick Schaumburg Auto., Inc. v. Hanover Ins. Co.,* 452 F.Supp.2d 857, 866 (N.D. Ill. 2006). If neither party demonstrates that

there is no genuine issue as to any material fact, neither party is entitled to summary judgment. *Id.*

### III. DISCUSSION

The issue before the Court is whether the officers performed an unreasonable search or seizure of Plaintiffs under the Fourth Amendment.

**A. Search and Seizure**

*1. Search*

Defendants argue that there was no search because Collette Stamps testified in her deposition that the officers did not search anything in her apartment. Ms. Stamps, however, undoubtedly used the word "search" according to its common usage and meant only that the officers did not, for example, look inside drawers or closets.

"Search" is, however, a legal term of art under the Fourth Amendment and refers to a governmental interference with a citizen's "reasonable expectation of privacy." *See Widgren v. Maple Grove Tp.*, 429 F.3d 575, 578-79 (6th Cir. 2005) (citing *Katz v. United States*, 389 U.S. 347 (1967)). Plaintiffs unquestionably are entitled to a reasonable expectation of privacy in their home. *See Katz*, 389 U.S. at 360 (Harlan, J., concurring); *United States v. Robinson*, 479 F.2d 300, 302 (7th

Cir. 1973). The officers' entry into the home therefore constitutes a "search" under the Fourth Amendment.

### *2. Seizure*

"Seizure" is also a legal term of art. When the government terminates a person's freedom of movement through intentionally applied means, a Fourth Amendment seizure has occurred. *Scott v. Harris*, 550 U.S. 372, 381 (2007). There can be no doubt that Plaintiffs' freedom of movement was temporarily halted for some period, however brief, after police broke into their apartment with their guns drawn. *See Jacobs v. City of Chicago*, 215 F.3d 758, 772 (7th Cir. 2000) (finding person who is not free to leave while officers conduct search is "seized"). Therefore, both Fourth Amendment search and seizure occurred.

### B. Reasonableness

A Fourth Amendment search or seizure may be unreasonable because it was either (1) based on an invalid warrant or (2) unreasonably executed. *See Jones v. Wilhelm*, 425 F.3d 455, 462 (7th Cir. 2005).

### *1. Validity of the Warrant*

The Fourth Amendment requires that a warrant must "particularly describ[e] the place to be searched." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). *Garrison* presents a set of facts remarkably similar to those of this case. In *Garrison*,

Baltimore police obtained a warrant to search the "third floor apartment" of a building. As it turned out, the third floor was divided into two apartments, one occupied by the targeted suspect, the other by a non-suspect. The police searched the wrong apartment before realizing that there were two apartments. *Id.* at 80.

In that case, the Supreme Court held that the warrant was valid. The key to the holding was an analysis of the officers' knowledge at the time they procured the warrant. *Id.* at 85. The Baltimore police officer who obtained the warrant first made specific inquiries to determine the identities of the occupants of the third floor. He visited the building and found that it matched the description given to him by a reliable confidential informant; he checked with a utility company, which told him *that there was only one third floor dwelling* and that it was listed in the name of the suspect; he found that police records showed the suspect living at that address. *Id.* at 81, 85 n.10. After these reasonable inquiries, the officer had not encountered any information to alert him to the possibility that there were two apartments on the third floor. Based on these facts, the Court found no constitutional violation in the issuance of the warrant. *Id.* at 86.

The facts are quite different in this case. Officer Honda was alerted from the beginning that there were two apartments on

the third floor.  When he asked about the door on the right, John Doe told him that no one lived there and not to worry about it. In his deposition, Officer Honda tried to skirt the issue by saying that he couldn't say he *knew* there was an "actual apartment" behind the right-hand door, but he admitted he knew there was a door there and that it did not lead to his intended target's apartment.

It is not clear what else the right-hand door might have reasonably led to, other than an apartment, as the photo in evidence of the two doors shows them to be almost identical. Searching two different apartments in the same building is, for Fourth Amendment purposes, the same as searching two separate houses – probable cause must be shown for searching each one. *Jacobs*, 215 F.3d at 767.  As the record suggests no probable cause for searching the apartment on the right, Officer Honda should have taken care to exclude it from the warrant in order to prevent exactly the kind of incident that occurred here.

Honda assumed that John Doe was speaking from experience when he said no one lived in the apartment, but Honda never asked John Doe the basis of his assertion.  Moreover, as John Doe had no track record as an informant, he had not built a record of past performance that would lend credibility to his statements. Officer Honda was not justified in assuming no one lived behind the right-hand door without more investigation.  *See id.* at 768

n.4 (noting officers seeking search warrants must take reasonable steps to confirm information from confidential informants).

In *Garrison*, the Supreme Court stated in dicta, "if the officers had known, or *even if they should have known*, that there were two dwelling units on the third floor . . . they would have been obligated to exclude respondents' apartment from the scope of the requested warrant." *Garrison*, 480 U.S. at 85 (emphasis added).

In this case, Officer Honda should have known that there were two apartments on the third floor. Even if he was not absolutely sure that the right-hand door led to another apartment, he should have either (1) excluded the possibility that there was a second, occupied apartment on the third floor by such means as checking the mailboxes downstairs or consulting a utility company or (2) narrowed the scope of the requested warrant so that it included only the targeted apartment. Even if he did not know the apartment number of the targeted apartment, he could have pinpointed it with greater specificity by referring in the warrant to the apartment "on the left," or at the north, south, etc., end of the hall. As the possibility exists that a search warrant will be executed by a different officer than the one who secured the warrant, the warrant must communicate to the second officer, without ambiguity, the exact location for which the first officer established probable cause to search. Officer

Honda could have easily ensured that this was done, and the Court can see no excuse for his not doing so. Sergeant Leibas is also complicit because he admittedly believed that the targeted apartment was "303" but made no objection to a complaint that identified only a third floor apartment.

The Court finds that the search warrant was not valid. Summary judgment is therefore granted for Plaintiffs as against Officer Honda and Sergeant Leibas. As for Officer Acevedo, who was Officer Honda's partner, the record does not conclusively establish that he should have known there were two apartments on the third floor. He also appears to have had a much lesser role, if any, in procuring the warrant. Summary judgment against him on this point is therefore denied.

### *2. Reasonableness of the Execution*

The test for reasonableness regarding the execution of a warrant is whether an officer's actions were objectively reasonable under the circumstances. *Los Angeles County, California v. Rettle*, 550 U.S. 609, 614 (2007). Whether an officer's subjective intentions were good or bad is immaterial. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Although no one suggests that Officer Honda and Sergeant Leibas acted with any malice whatsoever, their behavior must be considered objectively unreasonable under this standard. Because they knew or should have known that there were two apartments on the third floor,

they should have taken greater care to ensure that police breached only the correct apartment.

It is more difficult, however, to assess the reasonableness of the other four officers who are the subjects of Plaintiffs' summary judgment motion – Officers Acevedo, Alaniz, Hernandez, and Calvillo. Defendants admit that at their meeting before executing the search warrant, Officer Honda told the officers that they were executing the warrant on the door to the left after exiting the stairs. When the breach officers reached the third floor, however, they apparently did not see the first door and went to the second one, the door to the right-hand apartment. They then began breaking down the door after their knock-and-announce. Defendants claim there were no lights on in the stairwell or on the third floor landing (a point that Plaintiffs dispute). But undisputed evidence indicates that all officers carried powerful flashlights that were easily capable of illuminating poorly-lit areas. Defendants claim that Officer Honda arrived on the third floor after the breach officers had already begun their forced entry, meaning he was too late to tell them they were forcing the wrong door.

Some of the officers state that they did not know there would be two doors at the top of the stairs. This conflicts with Officer Honda's testimony that he told the officers that there were two doors and that the second one was not the target door.

One breach officer states that they could not use their flashlights because they needed both hands to carry the battering ram. If the other officers did not know there were two doors (a jury question because of conflicting testimony) and didn't see the first door in the dark (also a jury question), one might plausibly argue that their actions were reasonable.

The Court finds that determining the reasonableness of the execution of the warrant involves too many factual ambiguities for the Court to resolve on summary judgment. The Court cannot decide this matter without weighing the credibility of the witnesses, a task for which a jury is the proper body. The Court therefore denies summary judgment to both sides regarding the unreasonableness of the execution of the warrant by Officers Acevedo, Alaniz, Hernandez, and Calvillo. Defendants argue that these officers were acting in good faith, but the Court finds that their good faith, or lack thereof, is a factual question for the jury.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity for their actions because (1) their conduct did not violate any constitutional right of Plaintiffs and (2) even if a right was violated, it was not "clearly established" in relation to the facts confronting Defendants at the time they acted. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court disagrees.

The Plaintiffs' right to be secure in their home against unreasonable searches and seizures and the Defendants' obligation to procure a reasonably particularized warrant are well established. Officer Honda's and Sergeant Leibas' actions violated these principles. They are not entitled to qualified immunity. It remains to be determined whether the other officers violated Plaintiffs' rights and thereby forfeited qualified immunity.

## IV. CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Summary Judgment is granted on Count 1 as to Officer Honda and Sergeant Leibas but denied as to the other officers.

Defendants' Motion for Summary Judgment on Count 1 is denied. Under 745 Ill. Comp. Stat. 10/9-102, the City of Chicago is liable for the judgments against Officer Honda and Sergeant Leibas.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 9/14/2010